IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Paul Perrea, | : | Case No. 1:08-cv-352 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING PLAINTIFF'S |
| | : | MOTION FOR ATTORNEY'S FEES |
| Cincinnati Public Schools, *et al.,* | : | AND COSTS AND DENYING |
| | : | DEFENDANT'S BILL OF COSTS |
| Defendants. | : | |

This matter is before the Court on Plaintiff's Motion for Attorney's Fees and Costs (doc. 81) and Defendant's Bill of Costs (doc. 83). Plaintiff Paul Perrea seeks an award of attorney's fees in the amount of $99,626.00 and costs in the amount of $4,933.58 as a prevailing party in a civil rights suit pursuant to 42 U.S.C. § 1988(b). Defendant Cincinnati Public Schools ("CPS") disputes that Perrea is a prevailing party. CPS asserts to the contrary that it is the prevailing party and it seeks an award of costs in the amount of $3,491.50. For the foregoing reasons, the Court will **GRANT** Plaintiff's Motion and **AWARD PERREA ATTORNEY'S FEES IN THE AMOUNT OF $46,653.00 AND COSTS IN THE AMOUNT OF $2,466.79**. The Court will **DENY** Defendant's Bill of Costs.

I. PROCEDURAL BACKGROUND

Perrea, an employee of CPS, is a science teacher at Hughes Center High School in the CPS system. Perrea initiated this suit against Defendants CPS and Mary Hahn, the principal at Hughes Center, on May 21, 2008 after Hahn selected him to be surplussed from his position at Hughes Center. (Doc. 1.) Surplussed teachers lose their teaching positions at a particular school, but they remain salaried employees of CPS. Perrea asserted that he was surplussed on

the basis of his race pursuant to a provision in the collective bargaining agreement between the teachers' union and CPS which permitted consideration of "the racial balancing of staff" when teachers were surplussed. CPS denied that Perrea was surplussed on the basis of his race.

On May 22, 2008, Perrea filed a Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion for TRO") (doc. 3). He requested that the Court order Defendants (1) not to surplus Perrea from his position at Hughes Center and (2) to stop using racial balancing as a criterion for employment-related decisions. In June 2008, another Hughes Center science teacher resigned her position. Pursuant to the collective bargaining agreement, Principal Hahn informed Perrea in July 2008 that he could return to his position at Hughes Center. Perrea returned to Hughes Center for the 2008–2009 school year. Perrea suffered no loss in pay or job duties as a result of being on the surplus list for approximately five months. The Court denied the Motion for TRO after Perrea returned to teaching at Hughes Center because he could not establish irreparable harm. (Doc. 17.)

Perrea filed a First Amended Complaint on June 8, 2009. (Doc. 10.) Perrea asserted five claims in the First Amended Complaint against CPS and Principal Hahn:

1. Race discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*;
2. Race discrimination in violation of 42 U.S.C. § 1981;
3. Race discrimination in violation of the Equal Protection Clause of the Constitution pursuant to 42 U.S.C. § 1983;
4. Race discrimination in violation of Ohio Revised Code §§ 4112.01, *et seq.*; and
5. Violation of the First Amendment of the Constitution pursuant to 42 U.S.C. § 1983.

(*Id.*) Perrea asserted in the first four claims that he was surplussed on the basis of his race in violation of the Equal Protection Clause and federal and state statutory law. Both Defendants and the Court understood that Perrea was asserting claims for race discrimination against him

personally ("individual race discrimination claims") and a facial challenge to the staff racial balancing policy. (*See*, *e.g.*, doc. 29 at 2.) Perrea asserted in the last claim that he was surplussed in retaliation for exercising his First Amendment rights after he repeatedly requested that CPS publicly release semester exams administered to CPS ninth graders.

Perrea sought damages and injunctive relief in the First Amended Complaint. Specifically, Perrea sought "an order declaring that the racial balancing system at CPS is a violation of federal statutory and constitutional law and granting injunctive relief prohibiting further racial balancing in all employment decisions at CPS." (Doc. 10 at 9.)

Following discovery, Perrea and Defendants both moved for summary judgment. (Docs. 29 and 30.) Defendants moved for summary judgment as to all claims asserted against them. Defendants asserted that Perrea's individual race discrimination claims failed because Principal Hahn did not select Perrea for surplussing on the basis of his race and because surplussing did not constitute an adverse employment action as a matter of law. (Docs. 29, 37.) Defendants asserted that the First Amendment claim failed because Perrea's requests for the semester exams did not constitute protected speech, because Principal Hahn did not select Perrea for surplussing to retaliate against his speech, and again because surplussing did not constitute an adverse employment action as a matter of law. Additionally, as to the facial challenge to the racial balancing policy, Defendants asserted that the policy was constitutional and had been upheld by the Sixth Circuit in *Jacobson v. Cincinnati Board of Education*, 961 F.2d 100 (6th Cir. 1992). Defendants also asserted that Perrea had no evidence that CPS had enforced the racial balancing policy since 2003. Finally, Defendants asserted that Principal Hahn was entitled to qualified immunity as to the claims against her. (Doc. 29.)

3

Perrea moved for summary judgment only as to his facial challenge to the racial balancing policy. Specifically, Perrea moved for "the Court to declare that the 'racial balancing' system for teachers and staff at CPS was a violation of the Equal Protection Clause and Title VII." (Doc. 30 at 1.) In opposing Perrea's motion, Defendants again contended that the policy was constitutional. (Doc. 32.) Defendants also asserted that (1) Perrea lacked evidence that CPS considered the racial balance of the staff in making the surplussing decision, (2) Perrea did not suffer an actual injury as a matter of law from being surplussed, and (3) Perrea did not have standing to raise the facial challenge.

On April 20, 2010, the Court issued an Order Granting Plaintiff's Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("MSJ Order") (doc. 46). The Court held that Defendants were entitled to summary judgment on the First Amendment claim because Perrea's speech was not protected by the First Amendment and because a person of ordinary firmness would not have been chilled from exercising free speech rights by being surplussed. As to Perrea's individual race discrimination claims, the Court held that Perrea did not suffer an adverse employment action as a matter of law for purposes of the Title VII, 42 U.S.C. § 1981, and Ohio Revised Code chapter 4112 claims. The Court granted Defendants summary judgment as to those claims.

However, the Court also held that "the requirement that the employer commit an adverse action against the plaintiff has a different meaning in regards to an equal protection claim." (*Id.* at 28.) The Court found that parties had offered conflicting evidence regarding whether Perrea would have been surplussed in the absence of the staff racial balancing policy. The Court denied summary judgment to CPS on Perrea's individual claim that CPS discriminated against him on

the basis of his race in violation of the Equal Protection Clause. The Court, nonetheless, granted summary judgment to Hahn on Perrea's individual equal protection claim on the basis that she was entitled to qualified immunity.

Finally, the Court granted summary judgment to Perrea on the facial challenge to the racial balancing policy. The Court found that Perrea had standing at the time he filed his initial Complaint to assert the facial challenge in that he presented "specific evidence that he was forced to compete in a race-based system insofar as staff racial balance is a factor in surplus decisions." (*Id.* at 13.) The Court then struck down the racial balancing policy because it could not survive strict scrutiny analysis under the Equal Protection Clause. The Court concluded as follows:

> The Court declares as a matter of law that the CPS racial balance provisions violate the equal protection guarantee of the United States Constitution. CPS is prohibited from further racial balancing in making staff employment decisions.

(*Id.* at 34.)

The case then proceeded to trial on July 6-8, 2010 on Perrea's individual claim for race discrimination in violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983. The parties submitted a multi-paragraph Stipulation (doc. 70) which the Court read to the jury. The Stipulation stated in relevant part as follows:

> [The CPS] system of racial balancing is set out in the CPS collective bargaining agreement and in other CPS documents. One of the provisions regarding racial balancing was related to "surplussing" of teachers. Surplussing takes place when a teacher's position at one school is eliminated.
>
> * * *
>
> In February 2008, the school district determined to eliminate surplus teaching positions at Hughes Center. On or about February 21, 2008, Mr. Perrea received notice that he had been surplussed from Hughes.

5

> Mr. Perrea claims that the principal at Hughes Center, Ms. Hahn, decided to surplus his position to comply with CPS racial balancing provisions.
>
> [CPS] denies that Principal Hahn decided to surplus Mr. Perrea's position at Hughes Center High School because of his race. [CPS] states that Mr. Perrea was chosen as one of the surplus teachers because of Mr. Perrea's training, experience, and individual qualifications as compared to other science teachers at the school.
>
> Perrea filed this lawsuit challenging the surplussing action, based on the CPS system of racial balancing. On April 20, 2010, this Court held, based on recent United States Supreme Court cases, that the CPS racial balancing system was unconstitutional. An issue for the purposes of this trial, therefore, is whether Perrea himself was surplussed based on the CPS racial balancing system.

(*Id.* at 1-2.).

At the conclusion of the trial, the jury returned a verdict in favor of CPS. The jury answered special interrogatories indicating that it found CPS had "intentionally discriminated against Mr. Perrea based on his race in violation of his rights under the Equal Protection Clause[,]" but that CPS "would have made the same decision to surplus Mr. Perrea regardless of his race." (Doc. 79 at 2.) The jury, therefore, found that CPS had not violated Perrea's rights under the Equal Protection Clause. *Texas v. Lesage*, 528 U.S. 18, 20-21 (1999) (school admission case); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977); *Village of Arlington Hts. v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 271 n.21 (1977).

The parties now have filed their pending motions for attorney's fees and costs. The motions are ripe for adjudication.

## II. ANALYSIS

### A. Is Perrea a Prevailing Party?

A prevailing party in a civil rights action is entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988(b). "In any action or proceeding to enforce a provision of section[] . . .

1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.* The parties dispute whether Perrea is a prevailing party in this case. The Sixth Circuit accords "considerable deference" to a district court's determination of whether a plaintiff is a prevailing party because the district court has "a ring-side view of the underlying proceedings." *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010), *petition for cert. filed*, No. 10-569 (U.S. Oct. 27, 2010). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The Supreme Court in *Farrar* went on to clarify that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Id.* at 113; *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2007) (quoting *Farrar*).

      CPS argues that Perrea is not a prevailing party despite the fact that the Court declared that the CPS staff racial balancing party was unconstitutional. CPS cites *Farrar* for the proposition that "a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." 506 U.S. at 112; *see also Hewitt v. Helms*, 482 U.S. 755, 763 (1987) ("[A] favorable statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.'"). CPS contends that Perrea lacks an enforceable judgment on the merits here because the Court did not issue a separate injunction order prohibiting enforcement of the racial balancing policy. The Court disagrees.

      A court's failure to label the relief granted as "injunctive" does not necessarily disqualify

the plaintiff from being a prevailing party.  *See DiLaura*, 471 F.3d at 671.  In *DiLaura*, the plaintiffs were prevailing parties where the court granted the plaintiffs summary judgment and "stated on the record that the defendants could not enforce their ordinance against the plaintiffs' proposed use of the property."  *Id.* at 671.  The summary judgment order in *DiLaura* altered the relationship between the parties in that "the threat of enforcement [of the ordinance by the defendants against the plaintiffs] no longer existed."  *Id.*  The same analysis applies here.  This Court did not issue a separate injunction order, but the Court in the MSJ Order declared that "CPS is prohibited from further racial balancing in making staff employment decisions."  (Doc. 46 at 34.)

CPS also argues that Perrea's success is, at most, technical or *de minimis* and does not justify an award of fees.  *See Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 792 (1989).  The Supreme Court stated in dicta in *Garland* that "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied."  *Id.* at 792.  The Supreme Court clarified in a later case that use of the term "technical" in *Garland* was not intended to permit an analysis of "the magnitude of the relief obtained."  *Farrar*, 506 U.S. at 113-14.  Rather, "the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, [but it] does bear on the propriety of fees awarded under § 1988."  *Id.* at 114.  Accordingly, the "significance of the relief obtained goes only to the amount of fees."  *McQueary*, 614 F.3d at 603.  Therefore, the fact that Perrea was unsuccessful in proving that CPS unlawfully discriminated or retaliated against him does not prevent him from being a prevailing party.

Moreover, the Court finds that the relief accorded to Perrea was not *de minimis* or merely technical. CPS argues that the relief accorded to Perrea was *de minimis* because, CPS contends, Perrea did not establish that CPS had enforced the staff racial balancing policy. The record in this case undercuts that contention. The parties stipulated at the trial that the issue before the jury was "whether Perrea himself was surplussed based on the CPS racial balancing system." (Doc. 70 at 2.) When the jury determined at the conclusion of the trial that CPS had "intentionally discriminated against Mr. Perrea based on his race," (doc. 79 at 2), that factual finding was a determination that CPS had considered the staff racial balancing policy when making the decision to surplus Perrea. Perrea did not contend that CPS discriminated against him in any manner except by surplussing him.

Even absent that jury factual finding, the Court would be inclined to hold that Perrea is a prevailing party. The relief accorded to Perrea here is similar to the relief accorded to the prevailing party plaintiff in *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995). The district court in *Dambrot* prohibited the university from enforcing a policy against discriminatory harassment which the Court found to violate the First Amendment. *Dambrot*, 55 F.3d at 1182-85. The university argued that because the policy had never been enforced, the plaintiffs did not benefit from the judgment. The Sixth Circuit disagreed and found that the university's behavior towards plaintiffs had been modified. *Id.* at 1192. "Where Defendants previously had the right to prohibit Plaintiff's speech, now they do not." *Id.* Similarly, the Court here concludes that the relief accorded to Perrea resulted in a material alteration of the relationship between the parties. CPS was prohibited from considering Perrea's race in future surplussing decisions, whether or not it had considered his race in the previous surplussing decision. For all these reasons, the

Court determines that Perrea was a prevailing party for purposes of § 1988.

**B.      Determination of the Amount of Attorney's Fees and Costs to Award Perrea**

   **1.      General Standards for Calculating Attorney's Fee Awards**

In calculating a statutory award of attorneys' fees, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986). The result of this calculation—called the lodestar—"produces an award that *roughly* approximates the fee that the prevailing party would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010) (emphasis in the original). The lodestar calculation usually is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A reasonable fee is one which is adequate to attract competent counsel, but does not produce a windfall to attorneys. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).

The determination of the appropriate fee is complicated where a plaintiff achieves only limited success. "If a plaintiff has only limited success, the lodestar amount will be excessive 'even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'" *Granzeier v. Middleton*, 173 F.3d 568, 578 (6th Cir. 1999) (quoting *Hensley*, 461 U.S. at 436). In cases of limited success, the fee calculation will be different depending upon whether the claims on which the plaintiff was successful were related to the claims upon which he was unsuccessful.

"Where the plaintiff's claims are based on different facts and legal theories, and the

plaintiff has prevailed on only some of those claims, . . . the congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 789 (1989) (internal quotation and citation omitted). The analysis is more complex where the plaintiff's claims are related:

> [W]here the plaintiff's claims arise out of a common core of facts, and involve related legal theories . . . the most critical factor is the degree of success obtained . . . [and] the district courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.

*Id.* at 789-90 (internal quotation and citations omitted). The district court may focus on the plaintiff's overall success where the claims are related and not examine the plaintiff's success on a strict claim-by-claim basis. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 555 (6th Cir. 2008) (citing *DiLaura*, 471 F.3d at 673). In all cases, the "attorney's fee awards are to be proportional to the prevailing party's degree of success." *Granzeier*, 173 F.3d at 578.

### 2. Perrea's Attorney's Fee Calculation

The Court notes at this juncture that Perrea is not seeking the full amount of the lodestar calculation as his attorney's fee. Perrea bases his fee award calculation on a rate of $200 per hour for his attorney, Ted Wills. CPS does not challenge this hourly rate and the Court agrees that it is reasonable. Perrea's attorney avers that he expended 794.9 hours total on the case through the trial. (Doc. 81-1 ¶ 5.) Perrea agreed to strike from the fee calculation all hours expended after February 16, 2010, a date shortly after Perrea's attorney completed his work related to the summary judgment motions. The summary judgment work is significant because

11

the Court granted partial summary judgment in Perrea's favor on the equal protection-based facial challenge to the staff racial balancing policy. Perrea's voluntary reduction reduces the total hours expended to approximately 553 hours. (Doc. 81-2.)

Perrea also agreed to strike from his attorney's fees calculation all hours related to the First Amendment claim, although he refused to concede that his First Amendment claim was unrelated to the race discrimination claims. Perrea determined that his attorney spent approximately 10% of his time on the First Amendment claims.

Perrea does not reduce or strike from his calculation hours expended on the individual race discrimination claims. He contends that the unsuccessful individual race discrimination claims and the successful facial challenge to the racial balancing policy involved a common core of facts and related legal theories. *See Imwalle*, 515 F.3d at 554 ("When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.") (citation omitted).

In sum, Perrea seeks fees for 498.13 hours expended at $200 per hour which totals $99,626.00. Additionally, Perrea seeks a multiplier for purportedly taking on an unpopular case and achieving a result of great significance. Finally, Perrea seeks an award of costs in the amount of $4,933.58.

    **3.**    **CPS's Objection to the Award Calculation**

CPS objects to the fee award calculation on multiple grounds. It objects that the successful facial challenge to the staff racial balancing was not related to or intertwined with the individual race discrimination claims. It objects to awarding Perrea fees for any hours expended

on the individual discrimination claims. Part and parcel with that objection, CPS contends that the discovery that Perrea conducted was related only to the individual discrimination claims and that Perrea should not receive fees for the hours expended on that discovery. Additionally, CPS objects to awarding fees for any hours expended in support of Perrea's unsuccessful effort to obtain a preliminary injunction. Finally, CPS objects to numerous individual time entries on the grounds that the services rendered were unnecessary or unrelated to the current case. CPS's objections will be analyzed in more detail below as part of the Court's analysis as appropriate.

4.     **The Court's Analysis**

The fee calculation here is complex because although Perrea is a prevailing party, he obtained only limited success. Additionally, he brought both related and unrelated claims. Perrea made an appropriate reduction in the award sought when he severed approximately 10% of the total hours expended to account for work performed on the unsuccessful First Amendment claim. Perrea's First Amendment claim involved the same alleged adverse employment action as the individual race discrimination claims—the decision to surplus him—but it involved a different alleged protected activity and an unrelated legal theory. Perrea's discovery regarding his requests for the semester exams and CPS's denial of the requests was not relevant to establishing his race discrimination claims in any way.

Perrea also made an appropriate reduction in the award sought when he struck all hours expended after February 16, 2010, a date connected to the completion of work on the summary judgment motions. Perrea's attorney had performed all the work necessary to achieve success at summary judgment on the facial challenge to the staff racial balancing plan by February 16, 2010. Awarding fees for the work performed after February 16, 2010 would result in a windfall

to Perrea's attorney for hours expended on unsuccessful efforts to prove at trial his individual claim for race discrimination based on the Equal Protection Clause.

After these reductions, Perrea seeks fees for 498.13 hours expended at $200 per hour which totals $99,626.00. CPS contends that substantial additional reductions are appropriate. CPS asserts that the unsuccessful individual race discrimination claims were not related to the successful facial challenge to the policy and that Perrea should not receive attorney's fees for hours expended on the individual claims. *See Texas State Teacher's Ass'n*, 489 U.S. at 789 ). The Court does not agree to the extent that it concludes that the individual race discrimination and facial challenge claims were related.

A close examination of the claims pleaded and the defenses raised by CPS reveals that the facial challenge and individual claims were supported by a common core of related facts. Further, Perrea reasonably undertook discovery in order to attempt to establish his claims. Specifically, the arguments that CPS raised in defending against Perrea's facial claim required that Perrea conduct discovery and put on evidence. CPS challenged Perrea's standing to bring the facial challenge. (Doc. 32.) CPS contended that Perrea had "no evidence of CPS applying the racial balancing provisions in the collective bargaining agreement, or that race has been a determining factor in any transfer or surplus decisions." (Doc. 32 at 7.) CPS further contended that because Perrea could not establish that the racial balancing policy was applied to him, then he did not have an injury sufficient to establish Article III standing to mount the facial challenge. (*Id.* at 10-12.) Perrea responded to these arguments with evidence that he was forced to compete in a race-based system in the surplussing process. (Doc. 46 at 13.) Perrea presented evidence, which CPS sought to refute, that Principal Hahn selected him to be surplussed in part based on

14

his race.  The evidence used to establish standing overlapped with Perrea's evidence that he suffered an adverse employment action on the basis of his race for purposes of the individual discrimination claims.  Because the facial challenge and the individual discrimination claims involve a common core of related facts, the Court will not attempt to excise on an entry-by-entry basis the hours expended on the unsuccessful individual discrimination claims.

CPS also requests that Perrea not be awarded attorney's fees for the hours expended on the unsuccessful Motion for TRO.  The Court denied the Motion for TRO finding that Perrea had failed to establish irreparable harm because CPS returned him to his teaching position at Hughes Center before the new school year began.  Nonetheless, the majority of work on the Motion for TRO was completed before CPS informed Perrea that he could return to his position.  Perrea ultimately was successful in obtaining a *de facto* injunction barring consideration of staff racial balance in making surplus decisions.  The Court will not excise the hours expended on the Motion for TRO on an entry-by-entry basis.

Finally, CPS identifies approximately 31.6 hours in the fee calculation where Perrea's attorney provided services on legal matters unrelated to the current litigation.  (Doc. 82 at 16-17 n. 17-23.)  These matters included investigations conducted at CPS after Perrea returned to his position at Hughes Center, issues surrounding Perrea's contract and application for lead teacher status, and an unexplained potential conflict of interest.  Perrea has not refuted CPS's contention that these entries involve matters unrelated to the current litigation.  A number of the entries identified by CPS include both services that are related to the current litigation and services that are unrelated to the current litigation.  However, Perrea has not provided a means for the Court to determine how much of the approximately 31.6 hours were spent on issues related to the

15

current litigation. Accordingly, the Court will deduct 31.6 hours from the fee calculation, reducing the compensable hours worked on this litigation from 498.13 hours to 466.53 hours.

The reduction made in the preceding paragraph does not address the larger issue that Perrea is not entitled to the full amount of attorney's fees for the remaining 466.53 hours for which he seeks fees. The Court's mandate is to award fees "proportional to the prevailing party's degree of success." *Granzeier*, 173 F.3d at 578. Perrea's goals in bringing this litigation appeared to have been two-fold: (1) prevent CPS from applying the staff racial balancing policy in future surplussing decisions and (2) obtain a verdict and damages on his individual First Amendment and discrimination claims. Perrea's success was limited in that he did not establish his First Amendment or individual discrimination claims and he was not awarded any damages. His limited success, however, was significant. The Court struck down as unconstitutional, based on evolving Supreme Court jurisprudence, the CPS staff racial balancing policy which the Sixth Circuit had previously upheld in *Jacobson* in 1992. Neither party cited to any other case where the constitutional question presented had been litigated on the merits. As a result of Perrea's suit, CPS can no longer enforce the policy against teachers in fifty-eight CPS schools across the district.[1]

The issue then is how to determine an appropriate attorney's fee award for limited, but significant, success on the merits. The Court will not award Perrea the lodestar sum for the compensable hours expended of $93,306.00 (466.53 hours x $200 per hour) because an award in that amount would not be proportional to his success. However, the Court will not excise the hours expended on the unsuccessful claims on the entry-by-entry basis for the reasons explained

---

[1] "Basic Facts," Cincinnati Public Schools, http://www.cps-k12.org/general/general.html (last visited Nov. 4, 2010).

above. Instead, the Court must use its best judgment to award a reasonable fee. The Court determines that a fee of $46,653.00 is appropriate. Bearing in mind that Perrea has not requested fees for hours expended on his First Amendment claim, trial preparation, or trial, the Court finds that an amount equal to a sum of one-half of the $93,306.00 compensable-hours lodestar calculation adequately will compensate his attorney for Perrea's overall success. The Court will not award Perrea a multiplier because his success was limited. Finally, the Court will award Perrea costs in the amount equal to one-half of the $4,933.58 requested, or $2,466.79.

**C.     CPS's Bill of Costs**

CPS seeks an award of costs as the prevailing part in the amount of $3,491.50 pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. The Court declines to award costs to CPS because the Court has found that Perrea is the prevailing party.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees and Costs (doc. 81) is **GRANTED** to the extent that the Court **AWARDS PERREA ATTORNEY'S FEES IN THE AMOUNT OF $46,653.00 AND COSTS IN THE AMOUNT OF $2,466.79**. Defendant's Bill of Costs (doc. 83) is **DENIED**.

IT IS SO ORDERED.

    s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court